USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __3/31/2023__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

UNITED STATES OF AMERICA,

        -against-

MAXIMO PENA,

        Defendant.
-------------------------------------------------------X

90-CR-553 (KMW)

**OPINION & ORDER**

KIMBA M. WOOD, United States District Judge:

    Defendant Maximo Pena, proceeding *pro se*, moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Def.'s Mot., ECF No. 137.) Pena argues that he should be released because: (1) there has been an intervening change in law that affects his sentence; (2) he suffers from "several medical conditions" that put him at heightened risk of COVID-19; and (3) his record of rehabilitation, in combination with the length of time he has already served, warrant early release. (*Id.* at 4–7; 9–10.) He also contends that the 18 U.S.C. § 3553(a) sentencing factors support release. (*Id.* at 7–9.) The Government opposes Pena's motion. (Gov't Opp'n, ECF No. 140.) For the reasons below, Pena's motion for compassionate release is DENIED.

## BACKGROUND

    Pena led an organization, operating twenty-four hours per day out of approximately twenty apartment units in New York City, that sold or distributed more than 240 kilograms of crack and cocaine between May 1989 and July 1990. (Presentence Report ("PSR") ¶¶ 22–25, 30, 67.) Pena directly controlled seven of the units and was the supplier for the remaining thirteen. (*Id.* ¶ 25.) He also hired workers for the organization, processed the cocaine into crack, prepared the cocaine for sales, set prices, and supplied firearms, bullets, and drug-related

paraphernalia.  (*Id.* ¶¶ 25–26.)  During an encounter with the superintendent of one of the locations from which Pena's organization operated, Pena accused the superintendent of stealing crack, doused him with a flammable liquid, and set him on fire.  (*Id.* ¶¶ 27–28.)  Although the superintendent ultimately survived the encounter, he was hospitalized with very serious injuries.  (*Id.* ¶ 28.)

After a jury trial, Pena was found guilty of the following offenses: (1) conspiring to distribute and possess with intent to distribute more than 50 grams of cocaine base, in violation of 21 U.S.C. § 846; (2) engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848(a) and (b); (3) possessing with intent to distribute more than 50 grams of cocaine base, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A); and (4) using and carrying a firearm during and in relation to a drug trafficking offense, in violation of 21 U.S.C. §§ 924(c) and 2.  (J. at 1; *see also* PSR at 1.)  On October 4, 1991, Pena was sentenced to a term of life imprisonment, to be followed by a five-year term.  (J. at 2.)  The Second Circuit affirmed Pena's conviction on March 20, 1992.  *United States v. Arias*, 962 F.2d 4 (2d Cir. 1992).  The Supreme Court subsequently denied his petition for a writ of certiorari.  *Pena v. United States*, 506 U.S. 857 (1992).

Pena is currently incarcerated at United States Penitentiary ("USP") Coleman I.  He states that he requested compassionate release from the Warden of his facility and that the Warden denied his request in July 2022.  (Def.'s Mot. at 2.)  Pena submitted the instant motion on September 9, 2022.  (*Id.* at 17.)  In his motion, Pena argues that he should be released because: (1) there has been an intervening change in law that affects his sentence; (2) he suffers from "several medical conditions" that put him at heightened risk of COVID-19; and (3) his record of rehabilitation, in combination with the length of time he has already served, warrant early

release. (*Id.* at 4–7; 9–10.) He also contends that the 18 U.S.C. § 3553(a) sentencing factors support release. (*Id.* at 7–9.) The Government opposes early release. (Gov't Opp'n.)

## LEGAL STANDARD

Section 3582(c)(1)(A), as modified by the First Step Act, Pub. L. No. 115-391 (Dec. 21, 2018), authorizes a court to reduce a defendant's term of imprisonment upon motion of the Director of the Bureau of Prisons ("BOP") or upon motion of the defendant. A court may reduce a defendant's sentence only "if it finds that . . . extraordinary and compelling reasons warrant such a reduction[.]" 18 U.S.C. § 3582(c)(1)(A). Three requirements must be met before a court grants such relief.

First, absent waiver or forfeiture by the Government, a petitioner must "fully exhaust[] all administrative" remedies in requesting relief from the BOP. *Id.*; *see also United States v. Saladino*, 7 F.4th 120, 124 (2d Cir. 2021). Second, a petitioner must show that "extraordinary and compelling reasons warrant such a reduction," 18 U.S.C. § 3582(c)(1)(A)(i), "and would not simply constitute second-guessing of the sentence previously imposed." *United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021). The Second Circuit has held that, pursuant to the First Step Act's revision of the compassionate release statute, district courts have "broad" discretion in determining what facts constitute "extraordinary and compelling reasons" justifying release. *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). Accordingly, a court is not limited to those circumstances specified in the Sentencing Guidelines, and may consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it]." *Id.* Third, a court must "consider[] the factors set forth in section 3553(a) to the extent that they are applicable[.]" 18 U.S.C. § 3582(c)(1)(A). These factors include, of particular relevance here,

"the nature and circumstances of the offense" and "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a).

## DISCUSSION

As an initial matter, the Government does not address whether Pena has in fact exhausted his administrative remedies. Nevertheless, assuming *arguendo* that Pena has met the exhaustion requirement, he still has not established that: (1) there is an "extraordinary and compelling" reason for his release, and (2) the § 3553(a) sentencing factors support release.

**I.    Pena Has Not Established an "Extraordinary and Compelling" Reason for Release**

Pena makes three arguments in support of his contention that he should be released: (1) pursuant to the First Step Act, courts may "consider intervening changes of law (such as changes to the Guidelines) or fact (such as behavior in prison) in exercising their discretion to reduce a sentence"; (2) he suffers from "several medical conditions" that put him at heightened risk of COVID-19; and (3) his record of rehabilitation, in combination with the length of time he has already served, warrant early release. (Def.'s Mot. at 4–7; 9–10.)

First, although Pena is correct that courts may consider intervening changes of law or fact in reducing sentences pursuant to the First Step Act, *see Concepcion v. United States*, 142 S. Ct. 2389, 2404 (2022); *United States v. Alba*, No. 21-873-CR, 2023 WL 220988, at *2 (2d Cir. Jan. 18, 2023), he has not established that his conviction would result in a different sentence today. As the Government correctly notes, given the quantity of drugs involved, Pena's use of violence, his direct control over several of the units from which the drugs were sold, and his role as the leader of the organization, his offense level would total at least 46. *See* U.S.S.G. §§ 2D1.1; 2D1.1(b)(2), (12); 3B1.1. This offense level, along with Pena's Criminal History Category of I,

4

would result in a Sentencing Guidelines range of life imprisonment if he were sentenced today. *See* U.S.S.G. § 5A.  Therefore, Pena has not established an extraordinary and compelling basis for early release on account of an intervening change in law.

Second, the medical conditions Pena describes, specifically his "BMI of 30 or higher" and history as a "former cigarette smoker[,]" do not rise to the level of extraordinary and compelling circumstances.  (Def.'s Mot. at 5-6.)  *See, e.g.*, *United States v. Lang*, No. 02-CR-1444, 2022 WL 17819518, at *3 (S.D.N.Y. Dec. 20, 2022) (Stein, J.) (declining to find extraordinary and compelling reasons where defendant suffered from elevated BMI); *United States v. Ayala*, No. 21-CR-111, 2022 WL 2334041, at *2 (S.D.N.Y. June 27, 2022) (Buchwald, J.) (declining to find extraordinary and compelling reasons where defendant was a former smoker).  As for the other conditions reflected in Pena's medical records, namely his history of cancer, seizures, and hypertension, there is no indication that the BOP has failed to address these conditions.  To the contrary, Pena's medical records show that he received radiation and a therapeutic to treat his cancer, which is in remission.  (Gov't Opp'n, Ex. B.)  As for his seizures and hypertension, he is receiving medication and appears to have regular visits with medical staff to manage these chronic conditions.  (*Id.*)  Furthermore, none of these conditions is "a specific life-ending or debilitating illness with a predictable, dire short-term prognosis" warranting early release.  *United States v. Ebbers*, 432 F. Supp. 3d 421, 429 (S.D.N.Y. 2020) (Caproni, J.).

Pena's vaccination status also weighs against granting release.  He completed the primary series of the Pfizer COVID-19 vaccine as of August 2021 and received a booster dose of the Moderna COVID-19 vaccine in October 2021.  (Gov't Opp'n, Ex. B.)  *See COVID-19 Vaccine Immunization Schedule for Persons 18 Years of Age*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/vaccines/covid-19/downloads/COVID-19-immunization-

schedule-ages-6months-older.pdf (last visited Mar. 28, 2023). Courts in this district have generally found that defendants who are fully vaccinated and have received a booster dose have "significant protection against serious illness or death should [they] contract COVID-19" and have denied early release in such cases. *See, e.g.*, *United States v. Sosa*, No. 14-CR-468, 2022 WL 1690833, at *3-4 (S.D.N.Y. May 26, 2022) (Torres, J.). Furthermore, USP Coleman I, where Pena is incarcerated, currently reports no inmates or staff members testing positive for COVID-19 and has modified operations to reduce the risk of transmission. *See BOP COVID-19 Statistics,* BUREAU OF PRISONS, https://www.bop.gov/coronavirus/covid19_statistics.html (last visited Mar. 28, 2023); *Covid-19 Modified Operations Plan & Matrix,* BUREAU OF PRISONS, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last visited Mar. 28, 2023). Accordingly, Pena has not established an "extraordinary and compelling" reason for release on account of these circumstances.

Finally, although the record shows that Pena has made positive steps toward rehabilitation during his time in custody, he has not established that early release is warranted on that basis. During his time in prison, Pena has completed his GED and has taken a variety of educational courses. (Def.'s Mot., Ex. B.) Pena states that, "after his almost 33 years of incarceration . . . he is no longer the same immature and irresponsible person . . . [sentenced] over 30 years ago." (Def.'s Reply at 4, ECF No. 142.) He also states that he has a reentry plan and would be employed immediately upon release. (*Id.* at 4–5.) The Government contends that Pena's "record of rehabilitation is mixed," reflecting four disciplinary proceedings related to possession of various banned items. (Gov't Opp'n at 5; Ex. A.) Although the Court commends Pena on pursuing his education while incarcerated, his claims of rehabilitation do not constitute extraordinary and compelling circumstances. *See, e.g.*, *United States v. Saleh*, No. 93-CR-181,

2020 WL 3839626, at *4 (S.D.N.Y. July 8, 2020) (Pauley, J.) (denying compassionate release on the basis of the defendant's rehabilitation record, explaining that "every inmate should strive for a productive institutional record while incarcerated because that is what is expected"). Moreover, rehabilitation alone cannot constitute an extraordinary and compelling reason warranting release. *See* 28 U.S.C. § 994(t).

## II.     The Section 3553(a) Factors Weigh Against Release

Because Pena has not established an extraordinary and compelling reason for release, the Court need not address the § 3553(a) sentencing factors. Nevertheless, the § 3553(a) sentencing factors do not support early release and provide an independent basis for denying Pena's motion.

At sentencing, the Court recognized "the devastation that Mr. Pena and his group wreaked on West 160th Street," and imposed a life sentence. (Sent'g Tr. 6:3–5.) Although Pena has served 33 years of his sentence, the severity of his criminal conduct, including his role as the leader of a massive drug trafficking organization, and dousing a man with flammable liquid and setting him on fire, warranted a life sentence. Moreover, as noted above, if Pena were sentenced today, the Sentencing Guidelines range would be life imprisonment. A reduction in his sentence at this time would not "promote respect for the law [and] provide just punishment for the offense." 18 U.S.C. § 3553(a).

## CONCLUSION

For the reasons stated above, Pena's motion pursuant to 18 U.S.C. § 3582(c)(1)(A) is DENIED. Pena's request for appointment of counsel is also DENIED.

The Clerk is respectfully directed to close the motion at ECF No. 137.

SO ORDERED.

7

Dated: New York, New York
March 31, 2023

*/s/ Kimba M. Wood*
KIMBA M. WOOD
United States District Judge