USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/25/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
UNITED STATES OF AMERICA

       v.

MAXIMO PENA,

       Defendant.
--------------------------------------------------------X

90-CR-553 (KMW)

**OPINION & ORDER**

KIMBA M. WOOD, United States District Judge:

    Defendant Maximo Pena, proceeding *pro se*, has filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Def.'s Mot., ECF No. 149.) The Government opposes Pena's motion. (Gov't Opp'n, ECF No. 154.) For the reasons set forth below, Pena's motion for compassionate release is DENIED.

## BACKGROUND

    The Court assumes familiarity with the facts of this case because they are detailed in its decision denying Pena's first motion for compassionate release. (*See* Mar. 31 Op. & Order, ECF No. 143 at 1-3.) As relevant here, Pena operated a large-scale narcotics organization in New York City out of roughly twenty apartment units. (Presentence Investigation Report ("PSR") ¶¶ 22-25, 30, 67.) Between January 1989 and October 1990, Pena directly controlled seven of the units and supplied the remaining thirteen. (*Id.* ¶ 25.) Pena's organization sold or distributed more than 240 kilograms of crack and cocaine and supplied firearms, bullets, and drug related paraphernalia. (*Id.* ¶¶ 25-26, 30, 67.)

    In June 1990, Pena confronted the superintendent of one of the locations from which Pena's organization operated. (*Id.* ¶ 27.) Pena accused the superintendent of stealing crack,

doused him with a flammable liquid, and set him on fire. (*Id.* ¶¶ 27-28.) Although the superintendent ultimately survived the encounter, he was hospitalized with serious injuries. (*Id.* ¶ 28).

Following his trial, a jury found Pena guilty of: (1) conspiring to distribute and possess with intent to distribute more than 50 grams of cocaine base, in violation of 21 U.S.C. § 846; (2) engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848(a) and (b); (3) possessing with intent to distribute more than 50 grams of cocaine base, in violation of 21 U.S.C. §§ 812, 847(a)(1), 841(b)(1)(A); and (4) using and carrying a firearm during and in relation to a drug trafficking offense, in violation of 21 U.S.C. §§ 924(c) and 2. (PSR at 1.)

On October 4, 1991, the Court sentenced Pena to life imprisonment, followed by a five-year term. (Mar. 31 Op. & Order at 2.) On March 20, 1992, the Second Circuit affirmed Pena's conviction, *United States v. Arias*, 962 F.2d 4 (2d Cir. 1992), and the Supreme Court subsequently denied his petition for a writ of certiorari. *Pena v. United States*, 506 U.S. 857 (1992).

Pena is currently incarcerated at FCI Otisville in Otisville, New York. *See Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Sept. 19, 2025). He attaches as an exhibit to his motion what appears to be a letter to the Warden of FCI Otisville requesting compassionate release, dated December 17, 2024. (Def.'s Mot., ECF No. 149-2 at 2.)

## LEGAL STANDARD

Under Section 3582(c)(1)(A), a court may reduce a defendant's sentence if the court finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). Three requirements must be met before a court can grant such relief. First, a

defendant must "fully exhaust[]" all administrative remedies with the Bureau of Prisons ("BOP"). *Id.* Second, a defendant must show that "extraordinary and compelling reasons warrant such a reduction."[1] *Id.* Third, the Section 3553(a) sentencing factors must support early release. *Id.*

## DISCUSSION

### I. Pena's Motion is Properly Before the Court

A defendant may move for compassionate release only after he has "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of [his] facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). As part of his motion, Pena attaches what appears to be a letter addressed to the Warden of FCI Otisville seeking a sentence reduction under 18 U.S.C. § 3582. (Def.'s Mot., ECF No. 149-2 at 2.) Although BOP has no record of receiving this letter, the Government "assumes *arguendo* that [Pena] satisfied the requirement that he exhaust his administrative remedies." (Gov't Opp'n at 3.) For purposes of considering this motion, the Court will do the same.

### II. Pena Has Not Demonstrated "Extraordinary and Compelling" Reasons for Compassionate Release

In his motion, Pena argues that extraordinary and compelling reasons exist under Section 1B1.13(b)(6) of the Sentencing Guidelines. (Def.'s Mot. at 15.) Similar to his first motion for compassionate release, Pena makes several arguments in support of his present motion: (1) his sentence's severity; (2) his living conditions during COVID-19; (3) an intervening change in the

---

[1] The Court's analysis as to whether a defendant has demonstrated extraordinary and compelling reasons is now controlled by the amended version of U.S.S.G. § 1B1.13, effective November 1, 2023.

3

law; (4) his health conditions have not received proper medical attention; and (5) his rehabilitation. (Def.'s Mot., ECF No. 149 at 3-4, 6, 9, 11, 15, 17.)

Section 1B1.13(b)(6) provides that an extraordinary and compelling reason exists where a defendant received an "unusually long sentence," has served at least ten years of his term of imprisonment, and a change in law produces "a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." U.S.S.G. § 1B1.13(b)(6).

Assuming, without deciding, that Section 1B1.13(b)(6) is valid,[2] Pena fails to establish that an extraordinary and compelling reason exists on the basis of that Section. Pena's sentence of life imprisonment is not grossly disparate relative to the sentence that he would likely receive today, as this Court already decided. (Mar. 31 Op. & Order at 4.) Pena would still be subject to a life sentence were the Court to sentence him today given the crimes for which he was convicted, the particularly heinous nature of them, and his Criminal History Category of I. *See* U.S.S.G. §§ 2D1.1; 2D1.1(b)(2), (12); 3B1.1; *see also* U.S.S.G. § 5A. As this Court already held, the nature and severity of Pena's criminal conduct—including the role he specifically played in the organization—warranted a life sentence. (Mar. 31 Op. & Order at 7.) Accordingly, Pena has not established an "extraordinary and compelling reason" for compassionate release.

Similarly, the prison conditions Pena experienced are not extraordinary and compelling because they are generally experienced by inmates nationwide. *United States v. Farmer*, 2022 WL 47517, at *4 (S.D.N.Y. Jan. 5, 2022) (Swain, C.J.) ("[G]eneralized statements about the

---

[2] The Government contends that Section 1B1.13(b)(6) is invalid because the Sentencing Commission exceeded its authority when it promulgated Section 1B1.13(b)(6). (Gov't Opp'n at 5–6.) The Court need not decide this issue to resolve Pena's motion. *See United States v. Gil*, No. 90-CR-306, 2024 WL 2875206, at *3 (S.D.N.Y. June 7, 2024) (Wood, J.)

conditions of confinement do not constitute [extraordinary and] compelling reasons for compassionate release."); *United States v. Stewart*, 2024 WL 5046927, at *2 (S.D.N.Y. Dec. 9, 2024) (Seibel, J.).

Additionally, the medical conditions that Pena describes do not rise to the level of extraordinary and compelling reasons justifying his early release. First, the Court has already considered and decided that the BOP is adequately treating Pena's hypertension and seizure disorder through regular visits with medical staff and medication. (Mar. 31 Op. & Order at 5.) Despite Pena's argument that he has not "been given proper medical attention" for his conditions, (Def.'s Mot. at 4), a review of the relevant medical records reveal that he is prescribed numerous medications for his conditions. (Gov't Opp'n, Ex. C.) In fact, as recently as January of this year, the BOP reviewed Pena's medications and found there were "no concerns" of continuing Pena's current medications. (*Id.* at 6.) Similarly, Pena's risk of contracting COVID-19 does not present an extraordinary and compelling reason for his release because he received multiple rounds of vaccinations against the illness. (*Id.* at 16; Gov't Opp'n, Ex. E at 34); *see also Rodriguez v. United States*, No. 11-CR-755-3, 2024 WL 3966700, at *7 (S.D.N.Y. Aug. 28, 2024) (Failla, J.) (finding the threat of COIVD-19 in a facility did not constitute an extraordinary and compelling reason for compassionate release purposes where the movant received vaccinations against the illness); *see also United States v. Roman*, No. 19-CR-116, 2022 WL 17819525, at *2 (S.D.N.Y. Dec. 20, 2022) (Wood, J.) (finding that the threat of COIVD-19 diminished both "nationwide and within the BOP").

Pena also claims that his prostate cancer has returned, warranting compassionate release. But a review of Pena's medical records shows that the BOP has continued to diagnose, monitor, and treat Pena's condition by referring him to oncologists, urologists, and implementing

treatment plans. (Gov't Opp'n, Ex. C. at 7.) As of January 2025, Pena's Prostate-Specific Antigen("PSA")[3] was improving following the BOP's course of treatment. (*Id.*) This narrative does not suggest that Pena has failed to receive appropriate care for his conditions but instead demonstrates that the BOP has been able to care for and attend to Pena's medical needs. Furthermore, Pena's conditions—as characterized both by himself and his medical records—are not "a specific life-ending or debilitating illness with a predictable, dire short-term prognosis" warranting early release. *United States v. Ebbers*, 432 F.Supp 3d 421, 429 (S.D.N.Y. 2020) (Caproni, J.).

Pena also argues that his rehabilitation constitutes an extraordinary and compelling reason. (Def.'s Mot. at 4.) But 28 U.S.C. § 994(t) states that "[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t); *see also* U.S.S.G. § 1B1.13(d). Although the Court commends Pena for his beneficial activities while in prison, that conduct is not extraordinary and compelling, either on its own or in combination with Pena's other arguments.

### III.  The Section 3553(a) Factors Weigh Against Release

Even if Pena could demonstrate an "extraordinary and compelling" reason for a sentence reduction, the Section 3553(a) factors do not support his release. As the Court stated in denying Pena's first motion for compassionate release, "Pena and his group wreaked [devastation] on West 160th Street." (Mar. 31 Op. & Order at 7.) The Court maintains its view—as it did then—that the severity of Pena's offense warrants a life sentence. Moreover, a sentence reduction

---

[3] A PSA test is a blood test that measures the level of PSA in an individual's body. It is an indicator of an individual's prostate cancer. As the Government notes, Pena's rising PSA was a sign that his prostate cancer was returning. (Gov't Opp'n, at 6).

would not "promote respect for the law [and] provide just punishment for the offense." 18 U.S.C. 3553(a).

## CONCLUSION

For the foregoing reasons, Pena's motion for compassionate release under Section 3582(c)(1)(A) is DENIED. The Clerk of Court is respectfully directed to close the pending motion at ECF No. 149 and mail a copy of this Opinion and Order to Pena.

SO ORDERED.

Dated: New York, New York
September 25, 2025

/s/ *Kimba M. Wood*
KIMBA M. WOOD
United States District Judge